**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ADRENA RODRIGUEZ and WILLIAM HODGE, individually and on behalf of a class of others similarly situated, | ) ) ) | Case Number: |
| | ) | Judge: |
| Plaintiffs, | ) ) | |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| PREMIER BANKCARD, LLC and FIRST PREMIER BANK, | ) ) ) | **With Jury Demand Endorsed Hereon** |
| Defendants. | ) ) | |

1.     Plaintiffs ADRENA RODRIGUEZ and WILLIAM HODGE, on behalf of themselves and a class of others similarly situated, allege that Defendants PREMIER BANKCARD, LLC and FIRST PREMIER BANK violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and associated regulations and FCC orders, by making non-emergency telephone calls using an automatic telephone dialing system to the cellular telephone numbers of Plaintiffs and others without the prior express consent of the called party.

1

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227(b)(3).

3.    This Court has personal jurisdiction and venue is proper in this District because, in routinely conducting business in this District, Defendants made the calls that are the subject of this dispute to Plaintiffs and other class members in this District. 47 U.S.C. § 227(b)(3).

## PARTIES

4.    Plaintiffs ADRENA RODRIGUEZ and WILLIAM HODGE are natural persons who reside in Lucas County, Ohio.

5.    Defendant PREMIER BANKCARD, LLC ("PREMIER BANKCARD") is a limited liability company organized under the laws of South Dakota. PREMIER BANKCARD may be served by personal service on its registered agent at its registered office in South Dakota, to wit: Miles K. Beacom, 3820 North Louise Avenue, Sioux Falls, South Dakota 57107-0145.

6.    Defendant FIRST PREMIER BANK is a bank organized under the laws of South Dakota. It may be served at its corporate headquarters at 601 South Minnesota Avenue, Sioux Falls, SD 57104-4868.

7.    Other defendants may be discovered in the course of litigation, and Plaintiffs respectfully pray that the Court will permit the addition of later discovered parties upon motion.

## FACTUAL ALLEGATIONS

8.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[,]" and found that "[b]anning such automated or prerecorded telephone calls … is the only effective means of protecting telephone consumers

2

from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, §§ 2(5), 2(14) (1991) (codified at 47 U.S.C. § 227).

9.      Some of the TCPA's most stringent restrictions pertain to calls placed to cell

phones:  The statute categorically bans the making of any non-emergency call using an automatic

telephone dialing system or an artificial or prerecorded voice to any telephone number assigned

to a cellular telephone service, unless with the "prior express consent" of the called party. 47

U.S.C. § 227(b)(1)(A)(iii); *see also Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 638 (7th

Cir. 2012) ("An automated call to a landline phone can be an annoyance; an automated call to a

cell phone adds expense to annoyance.").

10.     PREMIER BANKCARD markets and services credit card accounts issued by its

affiliated entity, Defendant FIRST PREMIER BANK, including to consumers in this State and

County.

11.     When accounts go unpaid, PREMIER BANKCARD makes telephone calls in an

attempt to collect the accounts.

12.     When PREMIER BANKCARD makes these telephone calls, it represents to call

recipients that the caller is FIRST PREMIER BANK; FIRST PREMIER BANK expressly

authorized PREMIER BANKCARD to do this.

13.     In the four years preceding the filing of this action, PREMIER BANKCARD has

made numerous telephone calls to consumers' cellular telephone numbers, including for debt

collection, telemarketing, and other purposes.

14.     In the course of its business, PREMIER BANKCARD made telephone calls to

Plaintiffs' cellular telephone numbers.

15.     PREMIER BANKCARD uses dialing systems created by Noble Systems and Aspect Software to make these telephone calls.

16.     PREMIER BANKCARD's systems have the capacity to predictively dial, and on information and belief, PREMIER BANKCARD uses these systems to predictively dial, including to Plaintiffs.

17.     PREMIER BANKCARD's dialing systems and collection/customer relationship management ("CRM") software have the capacity to store a database of telephone numbers and to dial those numbers at random or in sequential order.

18.     PREMIER BANKCARD programs telephone numbers into its collection/CRM system, which then dials those numbers at a rate to ensure that a customer representative will be available when a consumer answers the telephone.

19.     PREMIER BANKCARD's dialing systems have the capacity to dial from a list of telephone numbers without human intervention.

20.     PREMIER BANKCARD's dialing systems have the capacity to dial from a list of telephone numbers without a person having to physically dial each digit of a particular telephone number to place the call.

21.     The telephone calls to Plaintiffs and the class defined below were initiated by PREMIER BANKCARD using software which had the capacity to predictively dial at the time of the calls.

22.     Plaintiffs and the class defined below did not provide permission or consent for FIRST PREMIER BANK or PREMIER BANKCARD, or vendors on their behalf, to make the telephone calls to their cellular telephone numbers.

4

23.     PREMIER BANKCARD and FIRST PREMIER BANK knew about the TCPA before making the calls to Plaintiffs and the class defined below, but made these autodialed calls to cell phones in spite of such knowledge. They made the calls to Plaintiffs, for example, after they had already individually "bought off" a prior identical class action lawsuit for $200,000. *Luster v. First Premier Bank*, 1:14-cv-2844 (N.D. Ga.). The telephone calls were initiated intentionally, willfully, and knowingly, and not by accident or mistake.

### Facts Relating to Plaintiffs

24.     In the four years preceding the filing of this action, Plaintiffs have received debt collection and other calls from or on behalf of Defendants to their cellular telephone numbers without their express consent or after having asked that the calls stop.

25.     Plaintiffs WILLIAM HODGE and ADRENA RODRIGUEZ are husband and wife.

26.     Plaintiff WILLIAM HODGE opened two credit card accounts through PREMIER BANKCARD's affiliated entity, FIRST PREMIER BANK.

27.     The two credit card accounts WILLIAM HODGE opened through FIRST PREMIER BANK were in his name, only.

28.     ADRENA RODRIGUEZ did not sign any agreement or take any other action in relation to her husband obtaining his two FIRST PREMIER BANK credit cards, and she does not use his credit cards.

29.     At no time did ADRENA RODRIGUEZ provide her cellular telephone number to either Defendant.

30.     In approximately the summer of 2016, WILLIAM HODGE fell behind on his FIRST PREMIER BANK credit card account payments.

31.     Soon after, PREMIER BANKCARD began making debt collection calls to both Plaintiffs' cellular telephone numbers regarding WILLIAM HODGE's FIRST PREMIER BANK credit card account(s).

32.     On information and belief, PREMIER BANKCARD also made calls to Plaintiffs' cellular telephone numbers for purposes of selling additional goods or services after WILLIAM HODGE exceeded his credit limit.

33.     For example, PREMIER BANKCARD called WILLIAM HODGE's cellular telephone number repeatedly, including on or about July 8, 2016, August 1, 2016, August 2, 2016, August 4, 2016, August 11, 2016, August 12, 2016, August 13, 2016, August 16, 2016, and August 17, 2016, among other possible occasions—and sometimes multiple times per day.

34.     Defendant also called ADRENA RODRIGUEZ's cellular telephone number on or about July 8, 2016, July 25, 2016, July 27, 2016, July 28, 2016, July 29, 2016, July 30, 2016, July 31, 2016, August 11, 2016, August 12, 2016, August 15, 2016, August 16, 2016, and August 17, 2016, among other possible occasions—and sometimes multiple times per day.

35.     On or about July 12, 2016, WILLIAM HODGE called PREMIER BANKCARD back, and was informed by the representative that he had most recently been called because he had exceeded his credit limit as to one or both of his FIRST PREMIER BANK credit cards.

36.     During the July 12, 2016 call, WILLIAM HODGE requested that there be no further calls to his or ADRENA RODRIGUEZ's phones.

37.     Although the representative with whom WILLIAM HODGE spoke during the July 12, 2016 call indicated that the calling would stop, Defendants continued to cause calls to be made to Plaintiffs' cellular telephone numbers.

38.     Defendants' telephone calls to Plaintiffs' cellular telephone numbers were not made by a representative pressing each digit of Plaintiffs' numbers into a telephone keypad or otherwise physically placing the call; rather, PREMIER BANKCARD's Aspect and Noble dialers made the calls to Plaintiffs' cellular telephone number without human intervention, pulling them from a database containing telephone numbers and other stored consumer information.

39.     Some of Defendants' calls also included the use of a prerecorded voice.

40.     For example, when WILLIAM HODGE answered a call to his cell phone on or about August 17, 2016, he heard a recording tell him to "hold" for a representative, after which an individual came onto the line and informed Plaintiff he was calling from FIRST PREMIER BANK.

41.     On information and belief, the representative with whom Plaintiff spoke during the call on August 17, 2016, was a PREMIER BANKCARD employee, and the call was made by PREMIER BANKCARD as the servicer of FIRST PREMIER BANK credit cards.

42.     Plaintiffs did not provide permission or consent for Defendants, or vendors on their behalf, to make the telephone calls to their cellular telephone numbers, and to the extent any such permission was provided, it was expressly revoked when WILLIAM HODGE requested that all calls to his and ADRENA RODRIGUEZ's phones cease.

43.     Plaintiffs and the class defined below have each suffered a particularized and concrete injury-in-fact from Defendants' calls. These calls temporarily seized and trespassed on the use of their cell phones, and were an annoyance and nuisance. The calls invaded the recipients' privacy, and caused Plaintiffs and the class to waste time and divert attention away from other activities to address the incoming calls. *See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132

S. Ct. 740 (2012) (discussing congressional findings of consumer "outrage" as to autodialed and

prerecorded calls). These calls also depleted their cell phone's battery, including not only as a

result of the calls themselves, but in responding to them, as well—requiring an albeit small but

real monetary expense in relation to the electricity needed to recharge for such depletion.

## CLASS ACTION ALLEGATIONS

44.     This action is brought, under Rule 23(b)(3) of the Federal Rules of Civil

Procedure, on behalf of a class defined as:

> All persons in the United States (i) to whom either Defendant made one or more
> telephone calls (ii) to such person's cellular telephone number (iii) using the
> system used in making calls to Plaintiffs' cellular telephone numbers, (iv) in the
> four-year period preceding the filing of this action, through class certification, (v)
> but excluding the following: any person who provided his or her telephone
> number to either Defendant and did not request not to be called.

45.     The exact size of the class is information within the exclusive knowledge of

Defendants; however, on information and belief—including based on the experience of

Plaintiffs' counsel and the alleged use of autodialing technology—the size of the class is in the

thousands, if not hundreds of thousands.

46.     Plaintiffs are members of the proposed class.

47.     The class is so numerous that joinder of all members is impractical.

48.     There are questions of law and fact common to the class, which common issues

predominate over any issues involving only individual class members. The principal issues are:

> a.  Whether Defendants' dialing system constitutes an "automatic telephone
>
>     dialing system" under the TCPA and associated regulations and FCC orders;
>
> b.  Whether the telephone calls were made knowingly or willfully;
>
> c.  Damages, including whether Plaintiffs and the class are entitled to treble
>
>     damages for willful or knowing conduct, *see* 47 U.S.C. § 227(b)(3).

49.     The claims of Plaintiffs are typical of those of the class members.  All are based on the same facts and legal theories relating to Defendants making autodialed calls to their cell phones, where the person had not previously provided his or her number to either Defendant or asked not to be called.

50.     Plaintiffs will fairly and adequately protect the interests of the class, and have no interests that might conflict with those of the class.  Plaintiffs have retained counsel experienced in handling TCPA robocall actions and class actions.  Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this action.

51.     Certification of the class is appropriate, as Defendants—in making autodialed calls to the cellular telephones of Plaintiffs and the class—have acted on grounds that apply generally to the class, such that final injunctive relief is appropriate respecting the class as a whole. Moreover, it is clear that money damages are insufficient to wrench compliance. We know this, for example, because Defendants have been sued for this conduct multiple times before, but continue making these illegal calls.

52.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate, in that:

> a.  The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.
>
> b.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class treatment will permit a large number of similarly situated persons to prosecute their common claims relating to Defendants' autodialed calls to their cell phones in a single forum simultaneously, efficiently, and without the duplication of effort and expense

9

that numerous individual lawsuits would entail.  Absent a class action, many members of the class will likely not even obtain relief, whether because they are unaware of their right to relief from the harm caused by Defendants' illegal practices, due to the prohibitive time and monetary cost inherent in individual litigation, or otherwise.

## CAUSE OF ACTION

## COUNT ONE: TELEPHONE CONSUMER PROTECTION ACT

53.     The acts of Defendants constitute violations of the TCPA.

54.     Defendants' calls to the cell phones of Plaintiffs and the other members of the class were made using equipment capable of dialing numbers without human intervention; specifically, a predictive dialer.

55.     No human being physically dialed each digit of Plaintiffs' and the class's phone numbers to place calls to their respective cellular telephones.

56.     Defendants' violations of the TCPA include, but are not limited to, making telephone calls using an automatic telephone dialing system and/or an artificial or prerecorded voice to the cellular telephone numbers of Plaintiffs and the class, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii).

57.     As a result of Defendants' actions, Plaintiffs and the members of the class are entitled to an award of actual damages or $500, whichever is greater, for each such violation, as well as an injunction prohibiting future conduct in violation of the TCPA. 47 U.S.C. § 227(b)(3).

58.     Defendants' conduct was willful and knowing.  Plaintiffs, on behalf of themselves and the class, request that the Court treble damages pursuant to 47 U.S.C. § 227(b)(3).

59.    Plaintiffs request, on behalf of themselves and the class, that Defendants be enjoined from future TCPA violations. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of themselves and the class they seek to represent against Defendants, as follows:

A.    Certification of this matter as a class action;

B.    Damages pursuant to 47 U.S.C. § 227(b)(3);

C.    Injunctive relief, under 47 U.S.C. § 227(b)(3), to prevent future conduct by either Defendant in violation of the TCPA;

D.    To prevent future illegal conduct, a declaration that the telephone systems Defendants used to call Plaintiffs and the class constitute "automatic telephone dialing systems" pursuant to the TCPA;

D.    Attorneys' fees and litigation expenses of suit as provided by law;

E.    Costs of this action; and

F.    Such further and additional relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 18, 2016

ADRENA RODRIGUEZ and WILLIAM HODGE, individually and on behalf of a class of others similarly situated

By:    _s/ Gregory S. Reichenbach____
        Gregory S. Reichenbach (No. 0077876)
        ATTORNEY AT LAW
        P.O. Box 256
        Bluffton, OH 45817
        Telephone: (419) 529-8300
        Facsimile: (419) 529-8310
        greg@reichenbachlaw.com

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
aburke@burkelawllc.com

Kris Skaar
Justin T. Holcombe
SKAAR & FEAGLE, LLP
133 Mirramont Lake Dr.
Woodstock, GA 30189
Telephone: (770) 427-5600
Facsimile: (404) 601-1855
kskaar@skaarandfeagle.com
jholcombe@skaarandfeagle.com

James M. Feagle
SKAAR & FEAGLE, LLP
2374 Main St., Suite B
Tucker, GA 30084
Telephone: (404) 373-1970
Facsimile: (404) 601-1855
jfeagle@skaarandfeagle.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated: October 18, 2016                    _s/ Gregory S. Reichenbach_
                                           Gregory S. Reichenbach
                                           Attorney for Plaintiffs