**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Adrena Rodriguez, *et al.*,                                        Case No. 3:16CV2541

           Plaintiffs

      v.                                        **ORDER**

Premier Bankcard, LLC, *et al.*,

           Defendants

      This case arises under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.

      Plaintiffs Adrena Rodriguez and William Hodge allege that that defendants Premier

Bankcard, LLC and First Premier Bank (collectively, Premier) repeatedly called their cell phones

using an automated dialing system without prior express consent. They raise similar claims on

behalf of a putative class, which has not been certified.

      During the class discovery period, but before plaintiffs filed a motion for class

certification, Premier offered judgment on plaintiffs' individual claims under Fed. R. Civ. P. 68.

Plaintiffs accepted.

      Thereafter, plaintiffs filed the pending motion to proceed with class discovery and

certification (Doc. 55). Premier opposes the motion (Doc. 56), arguing that the offer of judgment

moots the case.

      Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

      I deny plaintiffs' motion insofar as it seeks to keep the case alive despite the accepted

offer of judgment. To that end, I agree with defendants that the case is moot.

I reserve judgment on plaintiffs' alternative request that I authorize notice of the settlement to the putative class pending a telephone conference on that issue. The parties have presented insufficient evidence for me to evaluate whether the putative class would suffer prejudice absent such notice.

### Background

I discussed the facts of this case at length in my summary judgment order on plaintiffs' individual claims, *Rodriguez v. Premier Bankcard, LLC*, 2018 WL 4184742, *1-2 (N.D. Ohio) (Carr, J.), (Doc. 44), and briefly summarize them here.

### I. Facts

Plaintiffs, who are married, maintain a joint cell phone account. (Doc. 36-1 at 1, ¶ 2). Each spouse has his or her own cell phone with a separate phone number. (*Id.* at 2, ¶ 4).

In July, 2014 and March, 2016, Hodge applied for and received two credit cards from First Premier in his name only. (Doc. 36-1 at 3-4, ¶ 8). Premier issued a credit card agreement to Hodge for each card. Each agreement contained a "consent-to-call" provision, whereby Hodge "agree[d] and expressly consent[ed] that [Premier and its affiliates] may call or contact [Hodge] at any cellular . . . telephone number . . . that . . . [Hodge] provide[d] or use[d] to contact [Premier]." (Doc. 30-9 at 3-4, ¶¶ 11-13; Doc. 43-1 at 8-12).

Over the life of the credit card accounts, Hodge gave defendants both his and Rodriguez's cell phone numbers. (*See* Doc. 30-6 at 8-10, ¶¶ 14-15, 17).

Shortly after Hodge opened his second account in 2016, he fell behind on his credit card payments. (Doc. 36-1 at 16, ¶ 36). Premier began collection efforts, using an automated dialing system to call both Hodge's and Rodriguez's phone numbers. (*Id.* at 16-17, ¶¶ 36-37).

By July 12, 2016,[1] Hodge and Rodriguez each had asked Premier to stop autodialing their cell phones. But the calls continued, apparently because a Premier employee failed to "flag" Hodge's account. (Doc. 36-1 at 18-19, ¶ 40). Finally, on August 17, 2016, Hodge again asked that Premier stop calling, and the calls to both plaintiffs ended. (*Id.* at 19, ¶¶ 41-42).

## II. Procedural History

Plaintiffs filed suit on October 18, 2016 and simultaneously filed what courts commonly call a "placeholder" motion for class certification.[2] (Doc. 1; Doc. 2). On August 28, 2017, I denied the class certification motion "as moot without prejudice to right to renew pending ruling on dispositive motions." (Text Order of 8/28/17).

On August 31, 2018, I granted in part and denied in part Premier's motion for summary judgment on plaintiffs' individual claims. *Rodriguez*, *supra*, 2018 WL 4184742. (Doc. 44). I determined that 1) Hodge consented to Premier's calls when he signed the credit card agreements; 2) Premier could rely on Hodge's representations that Premier could reach him at Rodriguez's number, even though Rodriguez did not explicitly consent to Premier's calls; and 3) Hodge and Rodriguez revoked their consent to Premier's calls, but the date of such revocation is a genuine dispute for trial. *Id.* at *5-16.

After my summary judgment ruling, the parties began class discovery. On January 4, 2019 – during the class discovery period, but before plaintiffs filed a new class certification motion – Premier gave plaintiffs a Rule 68 offer of judgment. Plaintiffs accepted. (Doc. 49).

---

[1] The parties dispute the date when Rodriguez and/or Hodge first told Premier to stop calling them.

[2] *See, e.g.*, *Progressive Health & Rehab Corp. v. Strategy Anesthesia, LLC*, 271 F. Supp. 3d 941, 949-50 (S.D. Ohio 2017).

The offer of judgment "is . . . in complete settlement of any and all claims and allegations by Plaintiffs against . . . Defendants." (Doc. 54 at 2, ¶ 8). Pursuant to that settlement, defendants paid plaintiffs "$115,500, which includes all damages relating to any alleged calls placed by, or on behalf of, Defendants to Plaintiffs' cellular telephone numbers . . . and an additional $33,000.00 in attorneys' fees." (Doc. 56-4). The parties agree that these amounts exceed plaintiffs' potential recovery for their individual claims. (*See* Doc. 55 at 2-3; Doc. 56 at 3-4).

The same day plaintiffs accepted the offer of judgment, they filed the pending motion.[3]

## Discussion

Premier argues that the case became moot when plaintiffs accepted the offer of judgment. Plaintiffs assert that the case is not moot and, alternatively, ask that I allow them to resume class discovery, so counsel may identify putative class members and send them notice of the settlement.

### I. Mootness

Generally, "[s]ettlement of a plaintiff's claims moots an action." *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) (internal quotations and citations omitted). But

> [S]pecial mootness rules exist for class actions. *Once a class is certified*, the mooting of the named plaintiff's claim does not moot the action, the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists. Where, on the other hand, the named plaintiff's claim becomes moot *before* certification, dismissal of the action is required.

*Id.* (emphasis supplied) (internal citations omitted).

---

[3] In a January 16, 2019 status conference, I deemed plaintiffs' first motion to proceed with class discovery and certification withdrawn without prejudice and granted them leave to refile that motion, *nunc pro tunc*, on or before January 25, 2019. I later granted plaintiffs' motion to extend that deadline to February 1, 2019. Plaintiffs filed their renewed motion on that date. (Doc. 55).

Premier argues that the offer of judgment moots the case because I have not certified a class. Plaintiffs respond that the offer of judgment is merely a strategic ploy to "pick off" their claims and avoid litigating on a class basis. They alternatively argue that the "inherently transitory" exception to mootness applies.

I agree with Premier.

## A. The Accepted Offer of Judgment Moots the Case

Generally, a class action becomes moot if the individual plaintiffs, like plaintiffs here, accept an offer of judgment providing full relief on their individual claims and there is no certified class or pending motion to certify. *See Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 311-12 (6th Cir. 2016) (citing *Pettrey v. Enterprise Title Agency, Inc.*, 584 F.3d 701 (6th Cir. 2009) (holding class action was moot where named plaintiffs executed settlement agreement providing relief requested in individual claims)).

### 1. The Picking Off Exception Does Not Apply Because Plaintiffs Accepted Premier's Offer of Judgment in Full Relief of Their Claims

Hodge and Rodriguez argue that I should apply the picking off exception to mootness announced in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980). (Doc. 55 at 5-9 (internal citations omitted). I disagree.

Plaintiffs in *Roper*, *supra*, 445 U.S. at 339, refused defendant's offers of judgment and tender of "the maximum amount that [they] could have recovered" after the district court denied class certification. Despite their objections, the district court entered judgment for plaintiffs. *Id.*

The Supreme Court held that the tender did not moot the case, explaining,

> Requiring multiple plaintiffs to bring separate actions, which effectively could be
> 'picked off' by a defendant's tender of judgment before an affirmative ruling on
> class certification could be obtained, obviously would frustrate the objectives of

5

class actions; moreover it would invite a waste of judicial resources by
stimulating successive suits brought by others claiming aggrievement.

*Id.* at 339.

The Sixth Circuit applied the picking off exception in *Wilson v. Gordon*, 822 F.3d 934,

947 (6th Cir. 2016). Plaintiffs in that case alleged that defendants, who managed Tennessee's

Medicaid program, violated the Medicaid statute by failing to timely process plaintiffs' Medicaid

applications and hold legally required hearings. *Id.* at 940. On the eve of oral argument on

plaintiffs' class certification and preliminary injunction motions, defendants enrolled the named

plaintiffs and about 100 other putative class members in Medicaid. *Id.* at 941.

The court in *Wilson* applied the picking off exception to prevent defendants from

"strategically mooting named plaintiffs' claims in an attempt to avoid a class action." *Id.* at 947.

It did so because defendants could continue delaying putative class members' applications,

which "would mean that no remedy could ever be provided for continuing abuses." *Id.* at 947,

951.

"The factual context in which th[e] question [of mootness] arises is important." *Roper*,

*supra*, 445 U.S. at 332. The facts here are unlike those in *Roper* and *Wilson*.

The plaintiffs in *Roper*, *supra*, 445 U.S. at 332-33, refused to "accept the tender in

settlement of the case; instead, judgment was entered in their favor by the court without their

consent and the case was dismissed over their continued objections." But, here, plaintiffs

accepted Premier's offer of judgment.

The defendants in *Wilson*, *supra*, 822 F.3d at 941, unilaterally redressed the Medicaid

applicants' harms; whereas, here, plaintiffs actively participated in a settlement by accepting

Premier's offer. Moreover, the defendants in *Wilson* did not provide all relief sought; they never

held hearings on plaintiffs' Medicaid applications. *See id.* at 943. But plaintiffs here admit that the offer of judgment in this case meets – and exceeds – the desired relief. (*See* Doc. 55 at 9).[4]

Here, as in *Montgomery*, *supra*, 822 F.3d at 311, plaintiffs "accepted Defendants' Rule 68 offer of judgment—which *included* costs and attorney's fees[.]" (Emphasis supplied). This "eliminat[es] any putative benefit from class certification" because no costs remain to shift to putative class members. *Id.*; *see also Pettrey*, *supra*, 584 F.3d at 706 (distinguishing *Roper* where plaintiffs "voluntarily relinquished" their claims pursuant to a settlement agreement that terminated their "personal stakes in the litigation"). Accordingly, the picking off exception does not apply.

### 2. Plaintiffs Cannot Avoid Mootness Due to Duress

Despite their decision to accept the offer of judgment, plaintiffs insist that I apply the picking off exception because, they claim, they accepted the offer "under compulsion and duress." (Doc. 55 at 4).

Plaintiffs cannot escape the effect of their acceptance on that ground.

If a party rejects an opponent's offer of judgment, or lets the offer expire, and "the offeree . . . obtains [judgment] not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).

---

[4] Plaintiffs also cite two out-of-circuit cases, *Stein v. Buccaneers Ltd. Partnership*, 772 F.3d 698 (11th Cir. 2014) and *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981), in urging me to apply the picking off exception. These cases are not binding authority. Moreover, they are distinguishable (and plaintiffs admit as much, at least as to *Stein*) because the individual plaintiffs in those cases did not accept an offer of judgment (*Stein*) or defendants' tender of the relief sought (*Zeidman*). I therefore decline plaintiffs' invitation to apply those cases here.

Plaintiffs submit that this "cost shifting provision[] compelled plaintiffs to accept" Premier's offer because it " was impossible for Plaintiffs to obtain a judgment more favorable than the offer." (Doc. 55 at 9).

In *Wolschlager v. Law Offices of Mitchell D. Bluhm & Associates, LLC*, --- F. Supp. 3d ----, 2017 WL 2257714 (W.D. Mich.), the court rejected an identical argument:

> Plaintiff claims that he "had no meaningful choice but to accept Defendants' Offer of Judgment" because he "faced the risk of having to pay Defendants' costs if a class was not certified." The Court disagrees. Rule 68 "does not apply to judgments in favor of the defendant or to judgments in favor of the plaintiff for an amount greater than the settlement offer." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 354 (1981). Under Rule 68, the only risk Plaintiff faced in denying Defendants' offer was having to pay Defendants' costs if Plaintiff was awarded a judgment for an amount less than the settlement offer. . . . Accordingly, the Court finds Plaintiff had a meaningful choice to accept or reject Defendants' Rule 68 offer and chose to voluntarily accept it by signing the offer.

2017 WL 2557714 at *3 n.1.

I find this reasoning persuasive. Accordingly, "by choosing to accept full relief for [themselves], Plaintiff[s] mooted this case in its entirety." *Id.* at *1.

Moreover, the pressure plaintiffs felt to accept the offer is not the type of "compulsion and duress" that can avoid Rule 68's effect. (*See* Doc. 55 at 4, 8 (citing *Olentangy Local Schs. Bd. of Educ. v. Delaware Cty. Bd. of Revision*, 23 N.E.3d 1086 (Ohio 2014)). To show duress, plaintiffs must demonstrate that: 1) they "involuntarily accepted [Premier's] terms;" 2) "circumstances permitted no other alternative;" and 3) "*said circumstances were the result of [Premier's] coercive acts*[.] . . . *The assertion of duress must be proven to have been the result of [Premier's] conduct and not by the plaintiff's necessities.*" *Blodgett v. Blodgett*, 551 N.E.2d 1249, 1251 (Ohio 1990) (internal quotations and citations omitted) (emphasis supplied).

Plaintiffs make no such showing. Instead, they maintain that Rule 68's cost-shifting mechanism forced them to accept. "[B]ut the workings of the judicial system are irrelevant in

this context." *Id.* at 1251. Accordingly, plaintiffs fail to demonstrate that Premier compelled their acceptance, and the offer of judgment moots their claims.

### B. The Inherently Transitory Exception Does Not Apply

On reply, plaintiffs argue that the "inherently transitory" exception to mootness also applies.[5] I disagree.

The inherently transitory exception enables individual plaintiffs to continue pursuing their cases where "the controversy . . . is such that [the case] becomes moot as to them before the district court can reasonably be expected to rule on a certification motion." *See Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975). The exception requires that plaintiffs show: "(1) that the injury be so transitory that it would likely evade review by becoming moot before the district court can rule on class certification, and (2) that it is certain other class members are suffering the injury." *Wilson*, *supra*, 822 F.3d at 945; *see also Unan v. Lyon*, 853 F.3d 279, 287 (6th Cir. 2017).

Under the first element of that test, "the uncertainty of the injury" must be "tied to the type of claim[.]" *Wilson*, *supra*, 822 F.3d at 947. Accordingly, the Supreme Court has refused to apply the exception in damages claims: "Unlike claims for injunctive relief challenging ongoing conduct, a claim for damages cannot evade review; it remains live until it is settled, judicially resolved, or barred by a statute of limitations." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 77 (2013).

Plaintiffs' complaint seeks injunctive relief for their class claim. (*See* Doc. 1 at 9, ¶ 51). They acknowledge, however, that "Premier's calling ceased" in the Summer of 2016. (Doc. 36-1

---

[5] Plaintiffs conclude in their motion and reply that "[t]his case is not moot due to the 'picking off,' 'inherently transitory,' and 'capable of repetition yet evading review' exceptions to mootness." (Doc. 55 at 11; Doc. 57 at 14). Neither the motion nor the reply includes an argument that the capable of repetition yet evading review exception applies. I therefore do not address or adjudicate the merits of their contention as to this exception.

at 19, ¶ 42). Accordingly, their individual claims do not challenge ongoing conduct as to them, and their harms do not satisfy the first element of the inherently transitory exception.

Plaintiffs attempt to fit their square-peg damages claim into the round-hole inherently transitory exception by arguing that Premier's offer of judgment "has made the class certification question itself inherently transitory." (Doc. 57 at 11). But the Sixth Circuit in *Wilson*, *supra*, made clear that a claim is not inherently transitory simply because a defendant offers judgment. *See* 822 F.3d at 947 (distinguishing plaintiffs' claim for failure to provide hearings on Medicaid applications from "*any* type of damages claim that could be mooted by a Rule 68 offer of judgment"). Therefore, the offer of judgment does not warrant applying the exception.

The second element of the inherently transitory exception also fails. Plaintiffs attempt to meet this element by arguing that "Defendants do not claim to have ceased using their autodialers to call persons within the class definition." (Doc. 57 at 11). But the inherently transitory exception requires plaintiffs to show others are suffering the complained-of injury. *Wilson*, *supra*, 822 F.3d at 945. Their attempt to shift their burden to defendants to show that putative class members are not suffering that harm falls short of the test.

## II. Continued Class Discovery/Notice to Class

Though the case is moot, plaintiffs ask that I allow them to resume class discovery to identify putative class members, send notice to the class, and appoint a new class representative. (Doc. 55 at 9-10; Doc. 57 at 12-14). Defendants argue that notice to the class is improper here, and, therefore, I should bar further discovery. (Doc. 56 at 13-15).

The parties have not supplied evidence sufficient for me to resolve this issue.

Fed. R. Civ. P. 23(e) governs settlement, and, thereby, notice of settlement, in class actions. "The purpose" of such notice "is to discourage the use of the class action device by the

10

individual representative plaintiff to secure an unjust private settlement and to protect the absent class members against the prejudice of discontinuance." *Doe v. Lexington-Fayette Urban Cty. Gov't*, 407 F.3d 755, 761 (6th Cir. 2005).

Rule 23(e) does not require notice where, as here, there is no certified class. Nonetheless, the Sixth Circuit has explained that "[i]f, upon examination, the district court should find that the putative class members are likely to be prejudiced on account of a settlement or dismissal, the district court should provide Rule 23(e) notice." *Doe*, *supra*, 407 F.3d at 761-64; *see also, e.g.*, *Griffith v. Javitch, Block & Rathbone, LLP*, 358 B.R. 338 (S.D. Ohio 2007), *modified on reconsideration*, *Griffith v. Javitch, Block & Rathbone, LLP*, 241 F.R.D. 600, 602-03 (S.D. Ohio 2007); *Swinney v. Amcomm Telecomms., Inc.*, 2013 WL 28063, *2-3 (E.D. Mich.); *G.D. ex rel. S.D. v. Lumpkin*, 2011 WL 13305343, *1-2 (S.D. Ohio); *Cramblit v. City of Columbus*, 2006 WL 1735329 (S.D. Ohio).[6]

---

[6] The parties argue, at length, whether *Doe*, *supra*, 407 F.3d 755, remains good law following the 2003 amendment to Rule 23(e).

Subsection (e) previously read: "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Fed. R. Civ. P. 23(e) (2002). This broad language prompted confusion among the circuit courts respecting whether a court must send notice if no class has been certified.

In 2003, an amendment to Rule 23 clarified that subsection (e) applies to "any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a *certified* class." Fed. R. Civ. P. 23(e) (2003) (emphasis added); *see also* Fed. R. Civ. P. 23(e) advisory committee's notes to 2003 amendments ("The new rule requires approval only if the claims, issues, or defenses of a *certified class* are resolved by a settlement, voluntary dismissal, or compromise.") (emphasis added).

Accordingly, insofar as *Doe*, *supra*, *required* district courts to send notice of a dismissal where a class was not certified, the 2003 amendment abrogates that holding. Plaintiffs concede as much on reply. (Doc. 57 at 12). But Rule 23 does not cabin a district judge's discretion to send notice to prevent prejudice to putative class members. Accordingly, *Doe* is instructive insofar as it discusses prejudice.

"The Court has discretion to determine whether such notice is required, based on an assessment of the likelihood of prejudice to absent class members caused by the settlement." *G.D. ex rel. S.D.*, *supra*, 2011 WL 13305343 at *1 (citing *Doe*, *supra*, 407 F.3d at 763). "In exercising this discretion, the Court examines such factors as the presence of collusion or bad faith, the existence of any reliance interest by the absent putative class members, the costs involved, and any other relevant factors." *Id.* at *1 (citing *Doe*, *supra*, 407 F.3d at 763; *Griffith*, *supra*, 241 F.R.D. at 602).

Press coverage of a class action can implicate putative class members' reliance interest in a case. *See Doe*, *supra*, 407 F.3d at 763 (internal citation omitted). Here, plaintiffs argue that prejudice is likely because this case has generated "considerable press." (Doc. 57 at 13).

The three web articles plaintiffs cite (Doc. 57 at 13) as evidence of the publicity in this case is not like the "widespread publicity" that concerned the court in *Doe*. *See* 407 F.3d at 763.

Rather, the situation here is like that in *Schemmer v. ChartOne, Inc.*, 2008 WL 1929980, *2 (N.D. Ohio) (Aldrich, J.). In that case, the court found a "lack of publicity" where three web articles had mentioned the case, and one judicial opinion and one brief had cited the case, but the judicial opinion failed to describe the case as a class action. *Id.* Similarly, here, only one article plaintiffs cite even mentions that this case is a class action.[7]

In *Doe*, on the other hand, "the local media devoted substantial coverage to" plaintiffs' allegations, including reference to two class actions. 407 F.3d at 763. Plaintiffs in that case, former participants in a government-sponsored youth program, alleged that the program's

---

[7] *See* Doc. 57 at 13 (citing Womble Bond Dickson, *Either "Called Party" Will Do: Consent from Subscriber Husband Defeats Wife's TCPA Claim Even Though She Was the Customary User of the Phone*, Nat'l Law Review (Sept. 3, 2018), https://www.natlawreview.com/article/either-called-party-will-do-consent-subscriber-husband-defeats-wife-s-tcpa-claim).

director sexually abused them and that county and city "officials were aware of," and may have actively concealed, the director's behavior. *Id.* at 758. The Sixth Circuit found that the local media attention that followed "once the abusive activity . . . was thrust into the open" was "[o]ne key factor" supporting a finding of prejudice in that case. *Id.* at 763.

The court in *Doe* noted, however, that, while a "low level of publicity combined with other factors [may] counsel[] against ordering notice[,] . . . the amount of publicity is simply one factor among others that a district court should take into account when considering whether putative class members are likely to be prejudiced by a settlement." *Id.*

Plaintiffs have not presented evidence addressing the other pertinent factors, namely "the presence of collusion or bad faith, . . . the costs involved, and any other relevant factors." *G.D. ex rel. S.D.*, *supra*, 2011 WL 13305343 at *1 (citing *Doe*, *supra*, 407 F.3d at 763; *Griffith*, *supra*, 241 F.R.D. at 602).

Accordingly, I will direct the clerk to set this matter for a telephone status/scheduling conference to discuss, *inter alia,* a timetable for further proceedings, including, if needed, an evidentiary or other hearing and/or additional briefing. Specifically, counsel shall address whether I should modify the protective order to enable plaintiffs' counsel to contact the sixteen persons whom, as defendant acknowledges, defendant's representatives called despite a do not call request.

13

**Conclusion**

It is, therefore, hereby

ORDERED THAT

1. Plaintiffs' motion to proceed with class discovery and certification (Doc. 55) is denied in part, insofar as the claims between the named plaintiffs and defendant are moot;

2. The clerk shall forthwith schedule a telephone conference as provided herein; and

3. Plaintiffs' motion, insofar as it seeks discovery for class notice, is held in abeyance pending further proceedings.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

14